Brad Kane, Esq. (ABN: 9111089)
bkane@kanelaw.la
Kane Law Firm
1154 S Crescent Hts. Blvd.
Los Angeles, CA 90035
Tel: (323) 937-3291 / Fax: (323) 571-3579
Attorneys For All Plaintiffs



FILED in the Trial Courts
State of Alaska Fourth District
JUN 2 5 2018
By_____ Deputy

RECEIVED
OCT 2 3 2018
HOLLAND & KNIGHT

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FOURTH JUDICIAL DISTRICT AT FAIRBANKS

KELSEA WOLLMAN and ANNE )
REVERMANN, )
                )
    Plaintiffs, )
v.                     )
                )
LITHIA MOTORS, INC., )
JACOB BALDRIDGE and )
HENRY CHING, )
                )
    Defendants. )

Case No. 4FA-18- O2113CI

## COMPLAINT FOR DAMAGES AND INJUNCTIVE/ DECLARATORY RELIEF

Plaintiff Kelsea Wollman (Wollman) and plaintiff Anne Revermann (Revermann) complain against Defendant Lithia Motors, Inc. (Lithia), Defendant Jacob Baldridge (Baldridge), and defendant Henry Ching (Ching) as follows:

### JURISDICTION OF THIS COURT

1.     Wollman lives in Alaska and submits to the Court's full jurisdiction.

2.     Revermann lived in Alaska at all relevant times and submits to the Court's full jurisdiction.

3.     Defendant Lithia is and was a national corporation registered in the State of Oregon and doing business in Fairbanks, Alaska. Lithia owns and operates a retail

automotive business in Fairbanks, Alaska where Wollman and Revermann were employed and the actions of Baldridge and Ching gave rise to this case.

4. Defendant Jacob Baldridge lives in Alaska. During all relevant times he was employed by Lithia in Fairbanks, Alaska. Plaintiffs are informed and believe that Baldridge now resides in the Third Judicial District.

5. Defendant Ching lives in Alaska. During all relevant times he was and remains employed by Lithia in Fairbanks, Alaska. Plaintiffs are informed and believe that Ching still resides in the Fourth Judicial District.

6. This Court has jurisdiction over these Claims under AS 22.10.020.

7. Venue is proper in this Court under Alaska Civil Rule 3 because the subject of this Complaint – that is, Defendants wrongful employment practices took place in Fairbanks, Alaska, in the Fourth Judicial District.

## GENERAL ALLEGATIONS

8. This suit is brought by two female, former employees of Defendant Lithia under AS 18.80.220 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), arising from a severe and/or pervasive sexually tainted work environment at the Defendant's Fairbanks, Alaska business which was perpetrated by Plaintiffs' supervisor(s) and coworker(s). Plaintiffs allege that Defendant Lithia created, maintained and failed to correct a known sexually hostile work environment at its Fairbanks, Alaska facility.

9. Revermann alleges that she was terminated in retaliation for having complained about the hostile work environment and for supporting Plaintiff Wollman in her complaint regarding the same.

10. Plaintiff Wollman alleges that she was constructively terminated in retaliation for having complained about the hostile work environment.

11. Plaintiffs also bring related allegations of retaliation, negligent supervision by Defendant Lithia, breach of the implied covenant of good faith and fair dealing in their employment contracts with Lithia, intentional infliction of emotional distress, negligent infliction of emotional distress, and other allegations below.

## Defendants' Harassment And Retaliation Against Wollman

12. Plaintiff Wollman was offered a part-time job with Defendant Lithia's store known as "Chevrolet Buick GMC of Fairbanks" and commenced work on or about March 26, 2016. At that time, Wollman was still in High School.

13. Initially, Wollman was employed as a Receptionist at the front desk.

14. Over time Wollman was given additional duties, including serving as barista at the in-house coffee shop. After Wollman graduated high school, Lithia gave her a full time position.

15. Wollman was told that other employees had been counseled not to socialize with her because a previous receptionist, Rebecca Hall, had been suspended and made redundant after she complained to Lithia management about inappropriate comments by Baldridge, who was married and manager of the Used Car Sales Department.

16. In approximately July, 2016, Wollman participated in a remote sales celebration at a Walmart store. Because the turnout of potential customers was higher than expected, Wollman was asked to stay and keep them engaged until a salesperson was free. However, on her own, Wollman convinced a customer to buy a car.

*Wollman et al. v. Lithia Motors, Inc., et al.*
Complaint For Damages And Declaratory Relief
Page -3-

**Exhibit A, Page 3 of 18**
Case 4:18-cv-00035-TMB   Document 1-1   Filed 10/30/18   Page 3 of 18

17. As a result, in about August 2016, Wollman began sales training at work, was given increased pay and elevated to salesperson on a probationary basis. Wollman was the dealership's first female salesperson.

18. In this new role, Wollman experienced much more contact and interaction with other salespersons and sales management, including Baldridge. Initially, Baldridge was helpful to Wollman by referring her deals, advising her on negotiations with customers, and being flexible on the terms of car deals in order to help Wollman close sales.

19. At the same time, Baldridge subjected Wollman to repeated inappropriate and harassing comments, including asking her what kind of underwear she wore.

20. In late August 2016, while Wollman was still a teenager, Baldridge physically accosted Wollman by grabbing her, forcibly kissing her, pressuring her to touch his penis, and making sexually lewd and suggestive comments. The following day, Baldrige approached Wollman at the sales office and whispered in her ear –"So, you think it's pretty big?" Seeking to avoid the topic, Wollman feigned ignorance of what Baldridge was talking about. Baldridge, however, insisted – "What did you think about last night? Do you think that could satisfy you?"

21. When Wollman attempted to set boundaries with Baldridge, Baldridge isolated her from the sales staff and impaired her ability to perform by impeding her relationships with customers. Baldridge retaliated by no longer referring deals, advising her on negotiations with customers and becoming inflexible on the terms of car deals in order to make it more difficult for Wollman to close sales.

22. In about September 2016, Baldridge's actions and behavior towards

Wollman abated somewhat, as they were re-directed to a new hire, Ashley Freeman ("Freeman"). At the same time, Baldridge began to make Wollman's job difficult, steering potential sales to others, and favoring Freeman. Other managers, likewise steered sales preferentially to other salespersons and away from Wollman.

23. In about November, 2016, Wollman approached Spencer Alexander ("Alexander"), the general manager of the store, about a transfer to another department. Alexander suggested Wollman could be transferred to the finance department after another year.

24. After Freeman's employment terminated in or about January 2017, Baldridge resumed harassment of Wollman.

25. In April 2017, Baldridge physically accosted Wollman a second time. Wollman had approached Baldridge to inquire about a truck she thought her boyfriend Patrick would be interested in. During a test drive of that truck, Baldridge grabbed Wollman's upper right leg in a sexual manner and made sexually lewd and suggestive comments such as "This truck will definitely make any girl's panties wet."; "I think it's so hot when a girl knows how to talk about under the hood of a car."; and "Why don't you just buy this truck, I could imagine you driving this. You would look so good in it."

26. On or about May 16, 2017, Baldridge physically accosted Wollman a third time. As Wollman was leaving work, Baldridge grabbed her hand, slid his hand over her genitals and down her leg while making sexually lewd and suggestive comments.

27. On or about May 17, 2017, Baldridge physically accosted Wollman a fourth time. When Wollman entered the sales office at Lithia, Baldridge grabbed her buttocks, pulled her towards him, and forcibly kissed her without her consent. Baldridge

later made several sexually lewd and suggestive comments to Wollman.

28. Later on or about May 17, 2017, Baldridge physically accosted Wollman a fifth time. As Wollman was leaving work in her vehicle with the windows rolled down, Baldridge approach her vehicle, reached through the open window, and grabbed her genitals.

29. On or about May 23, 2017, Wollman informed Revermann, then Finance Manager at the store, that Baldridge was sexually harassing and abusing her. Revermann told Wollman to write down the details of her abuse and told her to take a couple days off.

30. On or about May 23, 2017, Revermann forwarded Wollman's complaint against Baldridge to Lithia's Human Resources Director John Acosta ("Acosta").

31. Revermann also informed Alexander of Wollman's allegations, and Alexander indicated that Baldridge would be fired.

32. However, after Wollman returned to work on or about May 30, 2017, she was systematically excluded and isolated, which diminished her ability to perform as a salesperson and significantly reduced her income. Following her allegations against Baldridge, Alexander never again spoke to Wollman during her employment.

33. On or about June 5, 2017, Acosta informed Revermann that Baldridge had not been terminated, but that Lithia had transferred him to its Anchorage location.

34. On or about June 13, 2017, Wollman returned to work from pre-approved leave and was served with an Employee Concern Notice that criticized her sales performance, despite the fact that sales management had purposely steered promising sales prospects preferentially to other salespersons, and assigned other salespersons

to some of Wollman's transactions, resulting in reduced split/shared commission payments on those sales. Wollman was socially isolated, heavily criticized, and unsupported in her work.

35. In or about late June of 2017, when Wollman asked Fleet Manager Henry Ching ("Ching") why Alexander was avoiding her, Ching told Wollman that Lithia had only transferred Baldridge to its Anchorage location instead of firing him.

36. When Wollman could no longer endure the hostile work environment, she was constructively discharged on or about October, 2017.

**Defendants' Retaliation and Harassment Against Revermann**

37. Plaintiff Revermann began working as General Sales Manager at Defendant Lithia's Fairbanks store in or about January, 2017.

38. Throughout Revermann's tenure at Lithia, Ching subjected her to routine sexual harassment. Ching often made unsolicited and inappropriate comments to Revermann regarding her appearance. When Revermann walked by Ching's office, she could expect some sort of cat-call by Ching, often within earshot of other employees.

39. On or about May 2, 2017, Revermann received text messages without solicitation from Alexander that denigrated her physical appearance.

40. On or about May 10, 2017, Revermann received text messages without solicitation from Alexander in which he twice called her a "bitch."

41. After Revermann attempted to get Lithia and Alexander to change the culture and take action on Wollman's complaint, Revermann began to experience retaliation.

42. On June 5, 2017, Revermann contacted Acosta about terminating Lithia

employee Matthew Svoboda for absence issues. Acosta informed Revermann that Svoboda could not be terminated at that time because Svoboda had recently filed a complaint of his own against Baldridge. When Revermann inquired about Baldridge's status, Acosta informed her that Baldridge had not been terminated following his investigation. Rather, Lithia had decided to simply transfer Baldridge to Lithia's Anchorage location. Revermann told Acosta that Lithia was simply giving Baldridge a new playground. Acosta agreed with Revermann, and said he would address the issue with Alexander and Regional Vice President Bryan Osterhout ("Osterhout").

43. On or about June 13, 2017, Osterhout asked Revermann how she felt about Baldridge being transferred rather than terminated. Revermann reiterated that she thought it was a mistake, given Baldridge's past history of misconduct, including Baldridge's inappropriate comments toward herself.

44. On June 15, 2017, Revermann contacted Alexander via text message to inquire why Baldridge was still being paid: "Hey Jacobs time card shows 88 hours is he still getting paid approve time cards" [sic]. Alexander replied simply: "Yes he is still getting paid."

45. On or about June 21, 2017, Revermann received an unsolicited text message from Ching that contained a close-up picture of his buttocks.

46. On or about August 30, 2017, Revermann was speaking with Finance Manager Justin Vey. Revermann mentioned to Vey that her chiropractor recommended she use a ball massage, and that coincidentally, she owned a small vibrating ball. Ching interjected himself into the conversation stating "Is it in your toy drawer?" Ching's tone made clear his comment referred to sex toys. Revermann was stunned. When Ching

walked away, Vey told Revermann that Ching's comments were uncalled for.

47. The same day, Finance Manager Delissa Kinsey ("Kinsey") informed Revermann about inappropriate comments made to her by Ching, including that Kinsey's mother's boyfriend's penis was small. Kinsey further revealed that Ching had downloaded an application onto his work computer that allowed him to remotely activate his girlfriend's sex toys. When Revermann said she would address Ching's misconduct, Kinsey warned Revermann that Ching was "untouchable" and that Alexander would defend Ching.

48. On or about August 31, 2017, Revermann informed Alexander about Ching's comments towards herself and Kinsey. At first Alexander told Revermann to "write-up" Ching, but he quickly backtracked and told her he would address the issue during a September 1, 2017 managers meeting.

49. Alexander later falsely accused Revermann of having baited Kinsey into making false statements against Ching.

50. On or about September 1, 2017, Alexander addressed the managers meeting and discussed Lithia's core values and sexual harassment policy. Alexander explained that gossip about sexual harassment was an impediment to a "fun work environment." Alexander concluded his discussion of Lithia's "core values" by reiterating the necessity of a "fun" work environment: "Today is reset day....We're starting with a clean slate today, pushing the reset button on it....It's about forgiveness and it's about forgetting – put it away and move forward." Alexander failed to mention that Baldridge had not been disciplined or fired, only transferred to Lithia's Anchorage location, where he was free to continue harassing other unsuspecting female employees.

51. Alexander's message was reinforced in the sales meeting. Ching, who was not a regular attendee at sales meetings, showed up alongside Alexander. Ching positioned himself directly in front of Revermann, and rested his arm on her counter space. This was a clear indication that Alexander sided with Ching and would do nothing about Revermann's complaint.

52. On or about September 12, 2017, Revermann was asked to voluntarily resign. When she refused, she was served with involuntary separation paperwork. Included with the paperwork was an unsigned Employee Concern Notice that accused her of being unprofessional and uncommitted. Revermann alleges the stated reasons are merely pretext and she was actually terminated in retaliation for seeking to address ongoing and systemic sexual harassment at Defendant Lithia.

53. Revermann experienced extreme distress. She is in emotional despair over Lithia's failure to discipline her abuser and adequately address the harassment and abuse she experienced.

### Administrative Prerequisites

54. Plaintiffs Wollman and Revermann both timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the last applicable discriminatory act.

55. The EEOC issued Plaintiffs Notices of Right to Sue and Plaintiffs have filed this Complaint within ninety (90) days of their receipt of the Notices.

56. Plaintiffs have fulfilled all administrative prerequisites and timely file this cause of action.

### Employer, Employee and Agency Allegations

57. Wollman was an "employee" of Defendant Lithia within the meaning of § 2000e(f) of Title VII and AS 18.80.300, at all relevant times.

58. Revermann was an "employee" of Defendant Lithia within the meaning of § 2000e(f) of Title VII and AS 18.80.300, at all relevant times.

59. Lithia was at all relevant times was an "employer" within the meaning of § 2000e(b) of Title VII and AS 18.80.300, at all relevant times.

60. At all times mentioned, Defendant Baldridge was the agent, servant and/or employee of defendant Lithia, and was engaged in the performance of his duties, acting within the scope of his authority and was performing the business of his principal, Lithia.

61. At all times mentioned, Defendant Ching was the agent, servant and/or employee of defendant Lithia, and was engaged in the performance of his duties, acting within the scope of his authority and was performing the business of his principal, Lithia.

## CAUSE OF ACTION I
### (Sexually Hostile Work Environment, in Violation of Title VII)

62. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

63. Plaintiffs are females and have experienced a hostile work environment because of their sex.

64. Defendants' treatment of Plaintiffs was unwelcome and included, but was not limited to, a pervasive pattern of blatant and offensive sexual conduct and sexually inappropriate remarks.

65. This type of treatment was so severe and/or pervasive that it altered the conditions of Plaintiffs' employment and had an adverse impact on Plaintiffs' working

*Wollman et al. v. Lithia Motors, Inc., et al.*
Complaint For Damages And Declaratory Relief
Page -11-   **Exhibit A, Page 11 of 18**
Case 4:18-cv-00035-TMB   Document 1-1   Filed 10/30/18   Page 11 of 18

environment.

66. Despite notice of the hostile working environment, Defendant Lithia failed to take prompt and appropriate remedial action.

67. Defendant Lithia knew or should have known of the harassment and hostile environment perpetrated by management and lower level employees, and failed to take immediate and appropriate remedial action.

68. Defendant Lithia is also vicariously liable for the hostile work environment created and maintained by its supervisory level employee(s).

69. Plaintiffs have suffered and have damages such as lost compensation and benefits and emotional harm.

70. Defendants' unlawful conduct toward Plaintiffs in violation of Title VII was done with reckless disregard for their federally protected rights, and as such the Defendant should be subjected to punitive damages as well.

### CAUSE OF ACTION II
### (Retaliation in Violation of Title VII)

71. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

72. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), specifically provides that an employer may not take adverse job action against an employee who engages in protected activity.

73. Both Wollman and Revermann opposed Defendant Lithia's discriminatory treatment of women and complained about the sexually charged hostile work environment.

74. Lithia's termination of Revermann's employment and adverse employment actions against Wollman leading to her constructive discharge constitutes unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Plaintiffs have been injured by this retaliatory conduct.

75. Revermann and Wollman have suffered and has damages such as lost compensation and benefits and emotional harm.

76. Defendants' unlawful conduct toward Revermann and Wollman in violation of Title VII was done with reckless disregard for their federally protected rights, and as such the Defendants should be subjected to punitive damages as well.

## CAUSE OF ACTION III
### (Negligent Hiring, Supervision and/or Retention)

77. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

78. Defendant Lithia owed a duty to properly and competently supervise Baldridge. It breached this duty by permitting, or failing to discover and terminating, Baldridge's blatant and offensive sexual conduct and sexually inappropriate remarks.

79. Defendant Lithia owed a duty to properly and competently supervise Ching. It breached this duty by permitting, or failing to discover and terminating, Ching's blatant and offensive sexual conduct and sexually inappropriate remarks.

80. Lithia is vicariously liable for Baldridge's tortious conduct.

81. Lithia is vicariously liable for Ching's tortious conduct.

82. Defendant Lithia's conduct in hiring, supervising and/or retaining Baldridge amounted to negligence.

83. Defendant Lithia's conduct in hiring, supervising and/or retaining Ching amounted to negligence.

84. The Defendants' negligence caused injury and distress to the Plaintiffs.

85. Defendant Lithia is liable to the Plaintiff for its negligence.

86. As a result of Lithia's failures, Plaintiffs have been damaged in excess of $100,000, the precise amount to be proven at trial.

## CAUSE OF ACTION IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

87. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

88. The covenant of good faith and fair dealing is implied in every contract. The covenant of good faith and fair dealing required Defendant Lithia to comply with its obligations under the contracts of employment between it and Plaintiffs (Employment Contracts.")

89. As part of the Employment Contracts, Defendant, Lithia was to provide a place of employment for its employees with a climate and atmosphere which is conducive to the nature of their professional services.

90. Plaintiffs performed all conditions, the terms and conditions of the Employment Contracts, except those excused by Defendants' breaches.

91. As a direct and proximate result of Lithia's misconduct, the Plaintiffs have suffered and will continue to suffer substantial monetary damages in excess of $100,000. Plaintiffs will amend the complaint to set forth the full amount of said damages when ascertained.

92. Lithia knowingly and intentionally refused to provide benefits due under the Employment Contracts without substantial justification and in the absence of good faith.

93. Lithia's reprehensible conduct described above was intended to vex, injure and annoy the Plaintiffs and was done with a reckless indifference to plaintiffs' interests, and constitutes bad faith, oppression, fraud and/or malice entitling the Plaintiffs to punitive or exemplary damages in an amount appropriate to punish or make an example of Lithia to deter future misconduct.

## CAUSE OF ACTION V
### (Unlawful Employment Practices under Alaska Law)

94. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

95. The sexual harassment and termination of Revermann and the sexual harassment and constructive termination of Wollman by Defendant Lithia were violations of AS 18.80.220(a)(1) and (4) in that Plaintiffs were subjected to forbidden practice of sexual harassment, discrimination and retaliation for opposing illegal conduct.

96. Plaintiffs' terminations were, in part, based upon their opposition to sexual harassment, and their unwillingness to accede to the overt sexual advances being made by Defendants Baldridge and Ching.

97. Lithia's reprehensible conduct described above was intended to vex, injure and annoy the Plaintiffs and was done with a reckless indifference to plaintiffs' interests, and constitutes bad faith, oppression, fraud and/or malice entitling the Plaintiffs to

punitive or exemplary damages in an amount appropriate to punish or make an example of Lithia to deter future misconduct.

## CAUSE OF ACTION VI
### (Assault and Battery)

98.  Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

99.  Throughout Plaintiff Wollman's employment, Defendant Baldridge created a hostile environment and repeatedly sexually touched her, made degrading comments of a sexual nature to and about her in an offensive manner, interfered with Wollman's personal life and leered at her in a sexually suggestive fashion, all of which constituted unlawful assault and battery as well as sexual harassment.

100.  Pursuant to AS 09.60.070(b)(4) defendants committed a "serious criminal offense" by, among other things, assaulting Wollman.

101.  Defendants' reprehensible conduct described above was intended to vex, injure and annoy the Plaintiffs and was done with a reckless indifference to plaintiffs' interests, and constitutes bad faith, oppression, fraud and/or malice entitling the Plaintiffs to punitive or exemplary damages in an amount appropriate to punish or make an example of Lithia to deter future misconduct.

## CAUSE OF ACTION VII
### (Intentional Infliction of Emotional Distress)

102.  Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

103.  Defendants' above-described conduct is extreme and/or outrageous. Defendants intentionally and/or recklessly engaged in the above-described conduct.

104. Defendants' conduct caused plaintiffs to suffer severe emotional distress and/or bodily harm

105. Plaintiffs are now entitled to actual and exemplary damages.

106. Defendants' reprehensible conduct described above was intended to vex, injure and annoy the Plaintiffs and was done with a reckless indifference to plaintiffs' interests, and constitutes bad faith, oppression, fraud and/or malice entitling the Plaintiffs to punitive or exemplary damages in an amount appropriate to punish or make an example of Lithia to deter future misconduct.

## CAUSE OF ACTION VIII
### (Negligent Infliction of Emotional Distress)

107. Plaintiffs re-allege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

108. Defendants' preexisting relationship with Plaintiffs involved plaintiffs' rights to work in a safe, appropriate workplace free of harassment. Under the circumstances, it was reasonably foreseeable that harassment would cause Plaintiffs emotional harm.

109. The nature of Defendants' relationships with Plaintiffs imposed on Defendants a duty to refrain from conduct that would cause plaintiff emotional harm.

110. Defendants breached this duty and caused plaintiff foreseeable emotional distress.

111. Plaintiffs are entitled to related actual and exemplary damages.

112. Defendants' reprehensible conduct described above was intended to vex, injure and annoy the Plaintiffs and was done with a reckless indifference to plaintiffs' interests, and constitutes bad faith, oppression, fraud and/or malice entitling the

Plaintiffs to punitive or exemplary damages in an amount appropriate to punish or make an example of Lithia to deter future misconduct.

## MISCELLANEOUS

113. As a result of the acts of retaliation and the sexual harassment of Plaintiffs Wollman and Revermann, they suffered the following types of injuries and damages:

1. Mental and emotional distress, anxiety and suffering;
2. Humiliation and embarrassment;
3. Loss of enjoyment of life, past and future;
4. Loss of career opportunity, earning capacity;
5. Lost wages and benefits past and future;
6. Damage to reputation and character in the work community; and
7. Financial distress to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Wollman and Revermann pray for the following relief:

a. Back pay, in amounts to be determined at trial;
b. Front pay, in lieu of reinstatement;
c. Compensatory and consequential damages;
d. Punitive damages;
e. Injunctive and/or declaratory relief deterring and precluding defendants from future discrimination and/or retaliation;
f. Pre-judgment and post-judgment interest at the highest lawful rate;
g. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and
h. Such other and further relief as justice allows.

DATED this 22nd day of June, 2018.

KANE LAW FIRM

/s/ _____ 8906027 for
Brad S. Kane, ABN 9111089
Attorney For All Defendants and
Counterclaimants